UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMIE FRAID,<br><br>        Plaintiff,<br><br>    v.<br><br>BARRISTER GLOBAL SERVICES NETWORK, INC.,<br><br>        Defendant. | Civil Action No. 1:13-cv-10318-JLT |

## **AFFIDAVIT OF DEBRA D. BOWERS**

I, Debra D. Bowers, do hereby depose and state as follows:

1. I am over the age of eighteen years old. I submit this affidavit in support of the motion to dismiss, or, in the alternative, to transfer, filed by Defendant Barrister Global Services, Inc. ("Barrister"). Unless otherwise noted, the statements in this affidavit are based on my personal knowledge.

2. I am now, and at all times material to this matter have been, the President and Chief Executive Officer of Barrister, a Delaware corporation whose headquarters are in Hammond, Louisiana.

3. Barrister is a WBENC (Women's Business Enterprise National Council) and NWBOC (National Women Business Owners Corporation) Certified Woman Owned Business, and is the nation's oldest and largest certified woman owned provider of IT services.

4. Barrister has offices in Nevada and Louisiana, with the majority of its employees working in Louisiana.

5. Barrister has no offices or employees in Massachusetts.

- 2 -

6. Barrister's customers are primarily located in Illinois, California and New York. Barrister has no customers in Massachusetts.

7. Barrister is not registered to do business in Massachusetts, and pays no taxes in Massachusetts.

8. I have reviewed Barrister's business records related to the employment of Plaintiff Jamie Fraid, and I am personally familiar with the circumstances surrounding Ms. Fraid's employment at Barrister.

9. Ms. Fraid was hired as a Strategic Account Manager on June 25, 2012.

10. At the time of her hire, and at all relevant times of her employment at Barrister, it was understood that Ms. Fraid lived in Las Vegas, Nevada. To that end, Ms. Fraid listed a Las Vegas address on her Application for Employment and on her Form W-4, and that is the address that Barrister listed on all pay stubs for Ms. Fraid up through December 28, 2012.

11. While employed at Barrister, Ms. Fraid worked primarily with one specific customer, CDW Corporation ("CDW") at its Phoenix, Arizona location. As part of the requirements of her job, Ms. Fraid traveled regularly from her home in Las Vegas to CDW's office in Phoenix.

12. In October 2012, Barrister brought Ms. Fraid and other sales employees to Louisiana for a training session. At no time during that training session did Ms. Fraid mention to anyone at Barrister that she was planning to relocate outside of Las Vegas.

13. At no time did Barrister request that Ms. Fraid move to Massachusetts, which increased the distance and cost of travel to Ms. Braid's primary customer, CDW.

14. Ms. Fraid never made a specific request to move to Massachusetts, and never received approval by Barrister to make such a move.

15. A review of Barrister's internal records shows that Ms. Fraid reported working 40 hours per week for the entire month of November 2012, with the exception of one paid holiday for Thanksgiving. Ms. Fraid reported no other time off for November 2012, and more specifically, never requested time off to move to Massachusetts.

16. A review of Barrister's internal records shows that Ms. Fraid did not report any time off for the month of December 2012. Ms. Fraid was paid for 10.14 of Paid Time Off on her final check, which would have covered the pay period December 22, 2012 through January 4, 2013, with a pay date of January 11, 2013.

17. If Ms. Fraid moved from Las Vegas to Massachusetts during November or December of 2012, she did not report any time off for doing so – and Barrister was otherwise not aware of the move.

18. Ms. Fraid traveled to CDW's offices in Chicago, Illinois in December 2012. The common practice at Barrister is for the sales person to contact an administrative assistant at Barrister and submit a request to book travel. Based on Barrister's records, it appears that Ms. Fraid followed that practice and requested travel from Boston to Chicago in December 2012. The administrative assistant at Barrister typically would follow the instructions of the sales person, here Ms. Fraid, and would not have known whether the requested travel arrangements were specifically approved or authorized by Ms. Fraid's supervisor.

19. Barrister *never* made a decision to change Ms. Fraid's primary responsibility of servicing CDW's Phoenix office, and Barrister *never* made a decision to shift Ms. Fraid's job responsibility to service CDW's offices in Chicago. Barrister *never* authorized Ms. Fraid's move to Massachusetts and *never* authorized the additional travel expenses associated with Ms. Fraid traveling from Boston instead of Las Vegas.

20.     On December 27, 2012, Cyndi Temperato, Barrister's Human Resources Coordinator, placed a telephone call to Ms. Fraid to inform her that her employment was being terminated due to a reduction in force. Following standard procedure, Ms. Temperato asked Ms. Fraid to return all company assets, (i.e., laptop) and explained that Barrister would send a box with a return shipping label to her residence. It was during that call that Ms. Fraid advised Ms. Temperato that her address had changed from Las Vegas to Watertown, Massachusetts. Internal audit records at Barrister confirm that Barrister was not aware of a change of address change for Ms. Fraid until December 27, 2012, and Barrister changed the address for Fraid in its internal electronic records on that date.

21.     Within weeks after Ms. Fraid's termination at Barrister, she filed for unemployment benefits with the State of Nevada Department of Employment, Training and Rehabilitation, Employment Security Division (the "Nevada DET"). To that end, on January 14, 2013, in response to a request by the Nevada DET, Barrister submitted an Employer Notice of Claim for the "Claimant" identified as Jamie Fraid.

22.     On January 31, 2013, the Nevada DET contacted Barrister to confirm the amount of accrued Paid Time Off that Barrister had paid to Ms. Fraid. Barrister provided its response to the Nevada DET the next day, on February 1, 2013, indicating both the amount of Paid Time Off paid to Ms. Fraid and the date of the check sent to Ms. Fraid that included that amount.

23.     Barrister has not received a similar notification that Ms. Fraid is seeking unemployment benefits through the Commonwealth of Massachusetts.

Signed on this day, April 5, 2013, under the pains and penalties of perjury.

                                                   /s/ Debra D. Bowers
                                                   Debra D. Bowers